## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| ASPEN SPECIALTY INSURANCE COMPANY, 499 Washington Blvd., 8th Floor Jersey City, NJ 07310 <br><br> Plaintiff, <br><br> v. <br><br> JEFFREY JARWRI DORMU, D.O., 1210 Crittenden St. NW, Washington, DC 20011 <br><br> and <br><br> MINIMALLY INVASIVE VASCULAR CENTER OF MARYLAND, LLC, 9201 Cherry Lane, Laurel, Prince George's County, MD 20708 <br><br> Defendants. | Case No. _____ <br><br> **COMPLAINT FOR DECLARATORY RELIEF OR, IN THE ALTERNATIVE, RESCISSION** |

Plaintiff Aspen Specialty Insurance Company ("Aspen"), through its undersigned attorneys, files its Complaint for Declaratory Relief or, in the Alternative, Rescission against Defendants Jeffrey Jarwri Dormu, D.O. ("Dr. Dormu") and Minimally Invasive Vascular Center of Maryland, LLC ("MIVC"), alleging the following:

### SUMMARY OF ACTION

1.      Aspen seeks declaratory relief regarding its obligations under a physicians and surgeons professional liability insurance policy issued to Defendants in connection with an action pending before the Circuit Court for Prince George's County, Maryland styled *Heather Ann Terry, Individually, as surviving daughter and as Personal Representative of Estate of Linda Louise Terry*

*v. Jeffrey Jarwri Dormu, D.O. and Minimally Invasive Vascular Center of Maryland, LLC*, Case No.: CAL21-10978 (the "Terry Action"). Prior to the filing of the Terry Action and prior to the policy period of the Aspen Policy, Defendants received a request for medical records relating to the medical procedure at issue in the Terry Action that also threatened litigation against Defendants. As a result, the Terry Action is not covered under the Aspen Policy for at least two independent reasons: (1) a policy exclusion precludes coverage for claims where, prior to the policy period, any insured received a request for medical records; and (2) a policy condition was not met, which required that, prior to the policy period, no insured had a reasonable basis to believe that the procedure at issue in the Terry Action might reasonably be expected to be the basis of a claim or suit against any insured. Aspen therefore seeks a declaration that it has no duty to defend or to indemnify Defendants under the Aspen Policy in connection with the Terry Action. Moreover, Defendants' failure to disclose the request for medical records on the application for the Aspen Policy constituted a material misrepresentation. Therefore, in the alternative, Aspen seeks rescission of the Aspen Policy and a declaration that the policy is void *ab initio*.

## THE PARTIES

2.     Plaintiff Aspen is a corporation organized and existing under the laws of the State of North Dakota with its principal place of business in Jersey City, New Jersey. Aspen is therefore a citizen of both North Dakota and New Jersey.

3.     Dr. Dormu is, according to his representations in the Aspen Policy Application, a resident of the District of Columbia. Upon information and belief, Dr. Dormu is a citizen of the District of Columbia.

4.      MIVC is a Maryland limited liability company with its principal place of business in Laurel, Maryland.  Upon information and belief, Dr. Dormu is the sole member of MIVC.  Upon information and belief, MIVC is therefore a citizen of the District of Columbia.

## JURISDICTION AND VENUE

5.      This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332.  This is a civil action between citizens of different states.  In addition, the amount in controversy exceeds seventy-five thousand dollars ($75,000), exclusive of costs and interest.  Specifically, the Aspen Policy provides up to $1 million in coverage, in addition to coverage for defense costs.  The amount at issue, when considering likely defense costs and indemnity payments in the Terry Action, exceeds $75,000.

6.      This action is brought pursuant to 28 U.S.C. § 2201.  An actual controversy exists regarding the rights, duties, and obligations of the parties under the Aspen Policy in connection with the Terry Action.

7.      This Court has personal jurisdiction over Dr. Dormu because Aspen's claims arise from Dr. Dormu's acts within Maryland.  Dr. Dormu is doing business in Maryland and/or has transacted business in Maryland.  *See* Md. Code Ann., Cts. & Jud. Proc. § 6-103.  Additionally, Dr. Dormu is involved in a related action pending in the Circuit Court for Prince George's County (the Terry Action) and thus has consented to personal jurisdiction in this matter as it relates to the issues that give rise to this Complaint.

8.      This Court has personal jurisdiction over MIVC as a Maryland limited liability company and/or maintaining a principal place of business in Maryland.  *See* Md. Code Ann., Cts. & Jud. Proc. § 6-102.  Additionally, MIVC is involved in a related action pending in the Circuit

Court for Prince George's County (the Terry Action) and thus has consented to personal jurisdiction in this matter as it relates to the issues that give rise to this Complaint.

9.      Venue is proper in the United States District Court for the District of Maryland pursuant to 28 U.S.C. § 1391 because a substantial portion of the events giving rise to this Complaint occurred in this judicial district, including the pending Terry Action.

## BACKGROUND

### A.      The August 13, 2020 Surgery

10.     On August 13, 2020, Dr. Dormu performed an elective vascular surgery on Linda Louise Terry (the "Decedent") at MIVC.  A true and correct copy of the Terry Action Complaint is attached hereto as Exhibit A.  *See* Exhibit A, Terry Action Complaint ¶ 14.

11.     In the Terry Action, Heather Ann Terry, individually and as representative of the Estate of Linda Louise Terry (collectively, "Claimant") alleges that complications from the August 13, 2020 elective vascular surgery resulted in Decedent's death the same day.  *See* Exhibit A, Terry Action Complaint ¶¶ 24, 29, 31, 32.

### B.      Claimant's April 20, 2021 Request for Medical Records

12.     On April 20, 2021, Claimant's counsel sent Defendants correspondence containing a request for medical records (the "April 20, 2021 Request for Medical Records").  A true and correct copy of the April 20, 2021 Request for Medical Records is attached hereto as Exhibit B.

13.     The April 20, 2021 Request for Medical Records referenced a prior request for medical records made on or about February 3, 2021 (the "February 3, 2021 Request for Medical Records," together with the April 20, 2021 Request for Medical Records, the "Requests for Medical Records").  *See* Exhibit B, April 20, 2021 Request for Medical Records.

14.    The April 20, 2021 Request for Medical Records asserted that Defendants' "refusal to produce the medical records as requested is a violation of Maryland law."  It further stated:

> If you do not produce the medical records requested by my office by close of business this week, my clients will take all appropriate legal action to enforce their rights under Maryland and federal law and hold you accountable for violation of the law.  Moreover, please be on notice of possible litigation and your duty to preserve all documents (including electronic data, audit trails, etc.) concerning Ms. Terry *in addition to* your handling of our medical records request.

*See* Exhibit B, April 20, 2021 Request for Medical Records at 1.

15.    On April 21, 2021, Defendants responded to the April 20, 2021 Request for Medical Records and advised that they had enclosed "the requested medical records for L. Terry, including corresponding Operative Report, as requested" (the "April 21, 2021 Response to Requests for Medical Records").  A true and correct copy of the April 21, 2021 Response to Requests for Medical Records is attached hereto as Exhibit C.

**C.**    **The Terry Action**

16.    On August 26, 2021, Claimant filed a Statement of Claim against Defendants in the Health Care Alternative Dispute Resolution Office of the Circuit Court for Prince George's County.  *See* Exhibit A, Terry Action Complaint ¶ 3.

17.    On September 27, 2021, Claimant filed the Complaint in the Terry Action in the Circuit Court for Prince George's County.  *See* Exhibit A, Terry Action Complaint.

18.    The Terry Action Complaint alleges that Defendants departed from the applicable standards of care during the elective surgery and caused Decedent's death on the night of August 13, 2020.  *See* Exhibit A, Terry Action Complaint ¶¶ 24, 29, 31, 32.

**D.**    **Notice to Aspen**

19.    On October 28, 2021, Defendants first provided Aspen with notice of the Terry Action.

20.    On November 1, 2021, Aspen acknowledged receipt of the Terry Action Complaint.

21.    Defendants advised Aspen that they first learned of the Terry Action when they were served with the Terry Action Complaint on October 12, 2021. Defendants also advised Aspen that they provided notice of the Terry Action to another insurer, which had issued a policy prior to the Aspen Policy, but that insurer had denied coverage on the basis that its policy had expired.

22.    On or about November 3, 2021, as part of its investigation, Aspen asked Defendants whether they had received any requests for medical records prior to the filing of the Terry Action.

23.    In response, Defendants advised that they had received a request for billing records on March 2, 2021 but were unaware of any request for medical records.

24.    In reliance upon Defendants' representations, Aspen agreed to provide Defendants with a defense in the Terry Action subject to a reservation of rights, as stated in a letter dated December 13, 2021 (the "Reservation of Rights Letter"). A true and correct copy of the Reservation of Rights Letter is attached hereto as Exhibit D.

25.    The Reservation of Rights Letter reserved Aspen's rights on various grounds. It also recited the representations made by Defendants in connection with Aspen's investigation. For example, the Reservation of Rights Letter stated that "[i]t is [Aspen's] understanding a request for the remainder of Claimant's records [other than the billing records], including treatment records, was never made to Insured by Claimant or a representative of Claimant." *See* Exhibit D, Reservation of Rights Letter at 4.

26.    The Reservation of Rights Letter communicated Aspen's understanding that the Defendants were not aware of the Statement of Claim or the Terry Action Complaint until October

12, 2021, when Defendants were served with the Terry Action Complaint.  *See* Exhibit D, Reservation of Rights Letter at 4.

27.    On February 3, 2022, Aspen received copies of the Requests for Medical Records after they were produced in connection with the Terry Action.  Aspen was unaware of the existence of the Requests for Medical Records prior to Aspen's receipt of the requests on February 3, 2022.

28.    On March 7, 2022 (the "March 7, 2022 Aspen Letter"), Aspen advised Defendants that, after reviewing the Requests for Medical Records, Aspen had concluded that there is no coverage available for the Terry Action under the Aspen Policy.  A true and correct copy of the March 7, 2022 Aspen Letter is attached hereto as Exhibit E.

29.    In the March 7, 2022 Aspen Letter, Aspen stated that it would, "at this time, continue to provide a defense subject to its reservation of rights."  Aspen "reserve[d] the right to withdraw its defense at any time, including but not limited to after [Aspen] obtains a judgment that it has no duty to defend in connection with [the Terry Action]."  Aspen also reserved its right to seek reimbursement of any defense costs paid in connection with the Terry Action.  *See* Exhibit E, March 7, 2022 Aspen Letter at 1.

## THE ASPEN POLICY AND APPLICATION

### A.    The Aspen Policy

30.    Aspen issued Physicians and Surgeons Professional Liability Insurance policy no. MM00NRA21 to Defendants for the **policy period**[1] of October 9, 2021 to October 9, 2022 (the "Aspen Policy").  A true and correct copy of the Aspen Policy is attached hereto as Exhibit F.

31.    The Aspen Policy has Limits of Liability of $1 million for each **claim** and $3 million in the aggregate, subject to a $10,000 deductible for each **claim** arising from **professional**

---

[1] All bolded terms are defined in the Aspen Policy.

**services**.  The deductible is part of the Limits of Liability and applies to both **claim expenses** and

**damages**.  Pursuant to the Supplementary Payments Endorsement of the Aspen Policy, **claim**

**expenses** are outside, and in addition to, the Limits of Liability.  *See* Exhibit F, Aspen Policy at

021, Supplementary Payments Endorsement.

     32.    The Aspen Policy, as amended by endorsement, contains the following Coverage

Agreement:

### Section II. Coverage Agreement

> In consideration of the payment of the premium and Deductible, and in reliance upon the statements in the application, which is made a part hereof and deemed attached hereto, and subject to the Declarations and all terms of this policy, we agree as follows:

> Within the Limits of Liability shown on the Declarations and in excess of the deductible **we** will pay on **your** behalf all sums **you** become legally obligated to pay as **damages** as a result of a **claim** or **suit** first made against **you** or against any physician or person for whom **you** are legally responsible and reported to **us** during the **policy period** because of an **injury** caused by an **incident**; provided that

> > **A.**  Any **incident** must occur on or after the **retroactive date** and before the end of the **policy period**;

> > **B.**  Prior to the inception of this policy, no **insured** had a reasonable basis to believe: (1) that a professional duty had been breached; or (2) that an **incident** might reasonably be expected to be the basis of a **claim** or **suit** against any **insured;**

> > **C.**  **You** report the **claim** immediately but in no event later than thirty (30) [days] after **you** first become aware of such **claim** or the end of the **policy period** whichever is sooner . . . .

*See* Exhibit F, Aspen Policy at 008, 020.

     33.    The Aspen Policy contains the following definitions:

### Section I. Definitions

> Throughout this policy **you** and **your** mean any insured under this policy

. . .

B.    **Application** means all materials and information, including all signed **applications** and any materials attached thereto or incorporated therein, submitted by or on behalf of the **insureds** in connection with the underwriting of this policy or any policy of which this policy is a direct or indirect renewal or replacement. All such **applications**, attachments and materials are deemed attached to and incorporated into this policy.

C.    **Attempted concealment** means an act or instance of making an effort to accomplish **Concealment**, with or without success.

D.    **Claim**[2] means a demand for money or services received by **you** alleging an **injury** caused by an **incident** to which this insurance applies. **Claim** also means an **incident** that **you** report to **us**, which **you** reasonably believe may result in a demand for money or services. **Claim** does not include a demand for non-monetary or injunctive relief or any criminal proceeding. **Claims** can only arise from **professional services** within **your** profession as described on the Declarations.

F.    **Concealment** means withholding from **us** or the patient, material facts or information that, in good faith, ought to be disclosed or will increase **our** risk.

J.    **Incident** means any act, error, or omission, or misstatement or misleading statement by **you** in the rendering of or failure to render **professional services**. All such acts, errors, or omissions causally related to the rendering of or failure to render **professional services** shall be considered one **incident**. An **incident** shall be deemed to have occurred at the time of the earliest act, error, or omission comprising that **incident**. . . .

K.    **Injury** means bodily injury, sickness, disease or death sustained by any one person.

L.    **Insured** means a person or entity qualified under Section IV. The Insured

*See* Exhibit F, Aspen Policy at 006-007, 020.

---

[2] As amended by endorsement.

34.     The Aspen Policy, Exhibit F, Aspen Policy at 009, defines the **insureds** as follows,

in relevant part:

### Section IV. The Insured

The **insureds** under this policy are:

**A.**     The named **insured**;
**D.**     A person or entity added by applicable **endorsement**;

35.     Pursuant to the Additional Insured Endorsement, MIVC is an additional **insured**

under the Aspen Policy, effective October 9, 2021. *See* Exhibit F, Aspen Policy at 027, Additional

Insured Endorsement.

36.     The Aspen Policy contains the following exclusions:

### Section VI. Exclusions

Despite any other provision of this policy, this policy does not apply to any **claim** arising out of, based upon or attributable to, in whole or in part, or in any way involving, any of the following:

**E.**     Any claim that in any way involves:

   ...

   **3.**     Any **incident** which, prior to the inception of this policy, any **insured** had a reasonable basis to believe: (1) that a professional duty had been breached; or (2) that an **incident** might reasonably be expected to be the basis of a **claim** or **suit** against any **insured**;

**F.**     Any **claim** or **suit** brought by a patient where, prior to the inception of this policy, a patient or a legal representative of a patient requested the patient's medical records from **you** or **your** medical practice;

**N.**     Any liability in the event **you**, or someone **you** instruct or supervise, fraudulently alters, defaces or falsifies any record whether intentionally or unintentionally. This includes **concealment** or **attempted concealment** of any act or omission of **yours** relating to a **claim** for **damages** under this policy[.]

*See* Exhibit F, Aspen Policy at 009-011.

37.    The Aspen Policy contains the following conditions:

### Section IX. Conditions

D.    Assistance and Cooperation of the **Insured**. **You** shall cooperate with **us**. Cooperation by **you** includes acceptance of correspondence from **us** by the US Mail or any other public or private means of delivery. Upon **our** request, **you** shall agree to an examination by **us** under oath, attend hearings and trials and assist in making settlements. If requested, **you** shall also secure and give evidence, including medical records and other documentation, report facts, obtain the attendance of witnesses and otherwise assist in the conduct of **suits**. Also, upon request, **you** will help enforce any right of contribution, indemnity or apportionment that **you** might have so that **we** might exercise those rights in **your** name. **You** shall do nothing to prejudice **our** defense of any **suit**. **You** shall not enter into any oral or written contracts or agreements that in any way impair or waive **our** rights of defense.

O.    Entire Agreement. It is agreed that this policy, together with the Declarations, **endorsements** and the **application** as of the Inception Date of this Policy, constitute the entire agreement existing between the **us** and all **insureds**.

*See* Exhibit F, Aspen Policy at 013-015.

38.    The Aspen Policy contains the following provision relating to the **application**:

### Section XI. Representations

**You** represent and acknowledge that the statements and information contained in the **application** for this policy are true and accurate; are the basis of this policy; are to be considered as incorporated into and constituting a part of this policy; and shall be deemed material to the acceptance of this risk or the hazard assumed by **us** under this policy. This policy is issued in reliance upon the truth and accuracy of such representations.

In the event the **application** contains any misrepresentation or omission made with the intent to deceive or which materially affects either the acceptance of the risk or the hazard assumed by **us** under this policy, then this policy shall be void ab initio.

*See* Exhibit F, Aspen Policy at 015-016.

### B.    The Aspen Policy Application

39.    In connection with the issuance of the Aspen Policy, Defendants submitted an application signed by Dr. Dormu on September 17, 2021 (the "Application").  A true and correct copy of the Application is attached hereto as Exhibit G.  The Application contained the following questions:

> 70.    Are you aware of any circumstance, specific act or omission involving particular or specific professional service(s) that may result in a claim or suit, that has not been reported to a prior insurance carrier?
>
> 72.    Are you aware of, or have you had any requests for medical records by a patient or his/her legal representative(s) or attorney which might result in a claim or suit?

Defendants answered "no" to both of the above questions.  *See* Exhibit G, Application at 9 of 10.

40.    Defendants also submitted a "Representation and Warranty Statement of Application Acceptance & No Known Claims or Circumstances" as part of the Application, which was likewise signed by Dr. Dormu on September 17, 2021 (the "Warranty Statement").  By signing and initialing, Defendants affirmatively warranted the following statements to Aspen:

> "I have no knowledge of any claim, loss, notice of intent to sue or suit that has **not** already been reported to any current or prior insurance carrier or any other source from which coverage may be provided or payment made."
>
> "I have no knowledge of any fact, situation, circumstance, condition, defect or suspected defect that relates to a medical incident arising out of professional service(s) which could reasonably result in a claim or suit (regardless of whether or not the claim or suit would have merit) that has **not** already been reported to any current or prior insurance carrier or any other source from which coverage may be provided or payment made."
>
> "I have no knowledge of any request to me and/or my medical practice for patient medical records from a patient, patient's legal representative or other authorized third party alleging, accusing or investigating possible malpractice or breach of duty that has **not** already been reported to any current or prior insurance carrier or any other source from which coverage may be provided or payment made."
>
> "I have no knowledge of any request to me and/or my medical practice for patient medical records from a patient's legal representative or other authorized third party made after the death of a patient previously in my care that has **not** already been

reported to any current or prior insurance carrier or any other source from which coverage may be provided or payment made."

"I have no knowledge of any <u>adverse outcomes arising in whole or in part out of my professional service(s) that resulted in the death, disfigurement, permanent disability, or reduction of life expectancy of a patient</u> that have **not** already been reported to any current or prior insurance carrier or any other source from which coverage may be provided or payment made."

"I understand that the insurance policy for which I am applying does not provide any coverage for medical incidents that are known to me prior to the inception of coverage, if it can be established that a reasonable person would have known those incidents were likely to result in claims or suits, and coverage may be denied for such incidents under any policy issued to me by Aspen. Furthermore, I have been advised to report all such medical incidents to my prior insurance carrier prior to the expiration of my policy with that carrier."

*See* Exhibit G, Application at 1 of 1.

## COUNT ONE

**(Declaratory Relief Under the Aspen Policy)**
**(Medical Records Request Exclusion)**

41.     Aspen hereby re-alleges and incorporates by reference all preceding paragraphs above, in their entirety, as though fully set forth herein.

42.     Exclusion F of the Aspen Policy (the "Medical Records Request Exclusion") precludes coverage for "[a]ny **claim** or **suit** brought by a patient where, prior to the inception of this policy, a patient or a legal representative of a patient requested the patient's medical records from **you** or **your** medical practice."  Exhibit F, Aspen Policy at 010.

43.     The inception date of the Aspen Policy is October 9, 2021.

44.     Defendants received the Requests for Medical Records prior to October 9, 2021.

45.     The April 20, 2021 Request for Medical Records demanded that Defendants "produce the medical records requested by [Claimant's counsel] by close of business this week." *See* Exhibit B at 1.

46.     Defendants responded to the April 20, 2021 Request for Medical Records the following day (April 21, 2021) by producing the "requested medical records."  *See* Exhibit C.

47.     The **claim** or **suit** at issue in this matter is the Terry Action, which was filed by Claimant after making the Requests for Medical Records.

48.     Accordingly, pursuant to the application of the Medical Records Request Exclusion, no coverage is available for the Terry Action under the Aspen Policy.

49.     Aspen is therefore entitled to a declaration that it has no duty to defend or to indemnify Defendants in connection with the Terry Action.

50.     Because Aspen never had a duty to defend Defendants in connection with the Terry Action as a result of the application of the Medical Records Request Exclusion, Aspen is entitled to reimbursement of all costs and expenses paid by Aspen to defend Defendants in connection with the Terry Action.

## COUNT TWO

### (Declaratory Relief Under the Aspen Policy)
### (Prior Knowledge Condition)

51.     Aspen hereby re-alleges and incorporates by reference all preceding paragraphs above, in their entirety, as though fully set forth herein.

52.     The Coverage Agreement of the Aspen Policy states that coverage is available for a **claim** provided that, prior to the inception of the Aspen Policy, no **insured** had a reasonable basis to believe that an **incident** might reasonably be expected to be the basis of a **claim** or **suit** against any **insured** (the "Prior Knowledge Condition").  Exhibit F, Aspen Policy at 008.

53.     The Requests for Medical Records were received by Defendants prior to the October 9, 2021 inception date, and both related to the **incident** in the form of the surgery performed on Decedent on August 13, 2020 that is at issue in the Terry Action.

54.     In addition to containing a request for medical records, the April 20, 2021 Request for Medical Records advised Defendants to "be on notice of possible litigation" related to the surgery performed on Decedent on August 13, 2020 that is at issue in the Terry Action.

55.     The April 20, 2021 Request for Medical Records also stated that Defendants had a duty to preserve documents relating to both the treatment of Decedent and the handling of Claimant's medical records request.

56.     Accordingly, prior to the October 9, 2021 inception date of the Aspen Policy, an **insured**, specifically Defendants, had a reasonable basis to believe that Decedent's August 13, 2020 surgery might reasonably be expected to be the basis of a **claim** or **suit** against any **insured**.

57.     Therefore, due to Defendants' failure to satisfy the Prior Knowledge Condition, no coverage is available for the Terry Action under the Aspen Policy.

58.     Aspen is therefore entitled to a declaration that it has no duty to defend or to indemnify Defendants in connection with the Terry Action.

59.     Because Aspen never had a duty to defend Defendants in connection with the Terry Action as a result of Defendants' failure to satisfy the Prior Knowledge Condition, Aspen is entitled to reimbursement of all costs and expenses paid by Aspen to defend Defendants in connection with the Terry Action.

## COUNT THREE

### (Declaratory Relief Under the Aspen Policy)
### (Prior Knowledge Exclusion)

60.     Aspen hereby re-alleges and incorporates by reference all preceding paragraphs above, in their entirety, as though fully set forth herein.

61.     Exclusion E of the Aspen Policy (the "Prior Knowledge Exclusion") excludes from coverage any **claim** that in any way involves any **incident** which, prior to the inception of the

Aspen Policy, any **insured** had a reasonable basis to believe that an **incident** might reasonably be expected to be the basis of a **claim** or **suit** against any **insured**. *See* Exhibit F, Aspen Policy at 010.

62.     For the reasons alleged above in connection with the Prior Knowledge Condition, the Prior Knowledge Exclusion precludes coverage for the Terry Action.

63.     Aspen is therefore entitled to a declaration that it has no duty to defend or to indemnify Defendants in connection with the Terry Action.

64.     Because Aspen never had a duty to defend Defendants in connection with the Terry Action as a result of the application of the Prior Knowledge Exclusion, Aspen is entitled to reimbursement of all costs and expenses paid by Aspen to defend Defendants in connection with the Terry Action.

## COUNT FOUR

**(Declaratory Relief Under the Aspen Policy)**
**(Duty to Cooperate)**

65.     Aspen hereby re-alleges and incorporates by reference all preceding paragraphs above, in their entirety, as though fully set forth herein.

66.     As condition of coverage, the Aspen Policy required that Defendants cooperate with Aspen in connection with the Terry Action.

67.     While investigating the Terry Action Complaint, Aspen explicitly asked Defendants whether they had received any requests for medical records relating to this matter.

68.     Defendants failed to disclose the Requests for Medical Records in response to Aspen's inquiry.

69.    Had Defendants disclosed the Requests for Medical Records, Aspen would not have agreed to provide Defendants with a defense subject to a reservation of rights in connection with the Terry Action.

70.    Aspen is therefore entitled to a declaration that it has no duty to defend or to indemnify Defendants in connection with the Terry Action as a result of Defendants' failure to cooperate.

71.    Because Aspen would not have agreed to provide Defendants with a defense subject to a reservation of rights had Defendants cooperated with Aspen, Aspen is entitled to reimbursement of all costs and expenses paid by Aspen to defend Defendants in connection with the Terry Action.

<u>**COUNT FIVE**</u>

**(Declaratory Relief Under the Aspen Policy)**
**(Record Concealment Exclusion)**

72.    Aspen hereby re-alleges and incorporates by reference all preceding paragraphs above, in their entirety, as though fully set forth herein.

73.    Exclusion N of the Aspen Policy (the "Record Concealment Exclusion") precludes coverage for "[a]ny liability in the event **you**, or someone **you** instruct or supervise, fraudulently alters, defaces or falsifies any record whether intentionally or unintentionally. This includes **concealment** or **attempted concealment** of any act or omission of **yours** relating to a **claim** for **damages** under this policy." Exhibit F, Aspen Policy at 011.

74.    **Concealment** includes withholding from Aspen material facts or information that, in good faith, ought to be disclosed or will increase Aspen's risk.

75.    Defendants failed to disclose the Requests for Medical Records in response to specific inquires by Aspen.

76.     Therefore, no coverage is available for the Terry Action under the Aspen Policy, due to the application of the Records Concealment Exclusion.

77.     Aspen is therefore entitled to a declaration that it has no duty to defend or to indemnify Defendants in connection with the Terry Action.

78.     Because Aspen never had a duty to defend Defendants in connection with the Terry Action as a result of the application of the Records Concealment Exclusion, Aspen is entitled to reimbursement of all costs and expenses paid by Aspen to defend Defendants in connection with the Terry Action.

## COUNT SIX

**(In the Alternative, Declaratory Relief Under the Aspen Policy)**
**(Material Misrepresentations Regarding Defendants' Knowledge of Requests for Medical Records)**

79.     Aspen hereby re-alleges and incorporates by reference all preceding paragraphs above, in their entirety, as though fully set forth herein.

80.     This is a claim for declaratory relief pursuant to 28 U.S.C. § 2201.  If this Court declines to grant Aspen's First through Fifth Counts, then Aspen alternatively seeks a judicial determination as to whether the Aspen Policy is void *ab initio* due to material misrepresentations in the Application and the Warranty Statement of the Aspen Policy.

81.     In both the Application and the Warranty Statement, signed by Dr. Dormu, Defendants represented that they were not aware of any requests for medical records prior to September 17, 2021.

82.     Defendants received the Requests for Medical Records prior to September 17, 2021.

83.    Therefore, Defendants' representation in the Application and Warranty Statement that they had not received any requests for medical records was false.

84.    Had Defendants' Application and/or Warranty Statement representations been truthful with respect to Defendants' receipt of the Requests for Medical Records, Aspen would have declined to issue the Aspen Policy or would have issued the Aspen Policy on different terms.

85.    Therefore, based on material misrepresentations in the Application and/or the Warranty Statement regarding Defendants' knowledge of requests for medical records, Aspen is entitled to rescission of the Aspen Policy.

86.    Aspen is therefore, in the alternative, entitled to a declaration that the Aspen Policy issued to Defendants is rescinded and void *ab initio*.  Aspen is also entitled to reimbursement of all costs and expenses paid by Aspen to defend Defendants in connection with the Terry Action.

87.    Upon a declaration that the Aspen Policy is rescinded and void *ab initio*, Aspen will return the premium for the Aspen Policy to Defendants.

## COUNT SEVEN

**(In the Alternative, Declaratory Relief Under the Aspen Policy)**
**(Material Misrepresentations Regarding Defendants' Knowledge of Potential Claims)**

88.    Aspen hereby re-alleges and incorporates by reference all preceding paragraphs above, in their entirety, as though fully set forth herein.

89.    This is an alternative Count for declaratory relief pursuant to 28 U.S.C. § 2201.  If this Court declines to grant Aspen's First through Fifth Counts, then Aspen alternatively seeks a judicial determination as to whether the Aspen Policy is void *ab initio* due to material misrepresentations in the Application and Warranty Statement of the Aspen Policy.

90.    In both the Application and Warranty Statement, Defendants represented that they were not aware of any potential claims.  For example, in the Warranty Statement, Defendants

represented that they had "no knowledge of any fact, situation, circumstance, condition, defect or suspected defect that relates to a medical incident arising out of professional service(s) which could reasonably result in a claim or suit (regardless of whether or not the claim or suit would have merit) that has **not** already been reported to any current or prior insurance carrier or any other source from which coverage may be provided or payment made." *See* Exhibit G, Application at 1 of 1.

91.    Defendants had knowledge of Claimant's April 20, 2021 Request for Medical Records, which specifically placed Defendants on notice of possible litigation and its duty to preserve all documents related to Decedent's August 13, 2021 procedure.

92.    Therefore, Defendants' representation in the Application and Warranty Statement that they were not aware of any potential claims was false.

93.    Had Defendants' Application and/or Warranty Statement representations been truthful with respect to Defendants' receipt of the Requests for Medical Records, Aspen would have declined to issue the Aspen Policy or would have issued the Aspen Policy on different terms.

94.    Therefore, based on material misrepresentations in the Application and/or the Warranty Statement regarding Defendants' knowledge of a potential claim, Aspen is entitled to rescission of the Aspen Policy.

95.    Aspen is therefore, in the alternative, entitled to a declaration that the Aspen Policy issued to Defendants is rescinded and void *ab initio*. Aspen is also entitled to reimbursement of all costs and expenses paid by Aspen to defend Defendants in connection with the Terry Action.

96.    Upon a declaration that the Aspen Policy is rescinded and void *ab initio*, Aspen will return the premium for the Aspen Policy to Defendants.

## **PRAYER FOR RELIEF**

WHEREFORE, Aspen requests the following relief:

1.       For Count One, a declaration that Aspen does not have a duty to defend or to indemnify Defendants in connection with the Terry Action, and for reimbursement of all defense costs paid by Aspen in connection with the Terry Action;

2.       For Count Two, a declaration that Aspen does not have a duty to defend or to indemnify Defendants in connection with the Terry Action, and for reimbursement of all defense costs paid by Aspen in connection with the Terry Action;

3.       For Count Three, a declaration that Aspen does not have a duty to defend or to indemnify Defendants in connection with the Terry Action, and for reimbursement of all defense costs paid by Aspen in connection with the Terry Action;

4.       For Count Four, a declaration that Aspen does not have a duty to defend or to indemnify Defendants in connection with the Terry Action, and for reimbursement of all defense costs paid by Aspen in connection with the Terry Action;

5.       For Count Five, a declaration that Aspen does not have a duty to defend or to indemnify Defendants in connection with the Terry Action, and for reimbursement of all defense costs paid by Aspen in connection with the Terry Action;

6.       For Count Six, in the alternative, a declaration that the Aspen Policy issued to Defendants is void *ab initio* and for reimbursement of all defense costs paid by Aspen in connection with the Terry Action;

7.       For Count Seven, in the alternative, a declaration that the Aspen Policy issued to Defendants is void *ab initio* and for reimbursement of all defense costs paid by Aspen in connection with the Terry Action; and

8.       For such other and further relief as the Court may deem just and proper.

Dated:  April 1, 2022    Respectfully submitted,

           */s/*
         Christina M. Carroll
         (Md. Bar No. 16863)
         Dentons US LLP
         1900 K Street NW
         Washington, DC 20006
         Telephone: (202) 496-7500
         Facsimile: (202) 496-7756
         christina.carroll@dentons.com

         Shari L. Klevens (*Pro Hac Vice* Forthcoming)
         Craig M. Giometti (*Pro Hac Vice* Forthcoming)
         Dentons US LLP
         1900 K Street, N.W.
         Washington, DC 20006
         Telephone: (202) 496-7500
         Facsimile: (202) 496-7756
         shari.klevens@dentons.com
         craig.giometti@dentons.com

         *Attorneys for Plaintiff Aspen Specialty Insurance Company*