**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

| | |
|---|---|
| ASPEN SPECIALTY INSURANCE COMPANY, | |
| Plaintiff/Counterclaim Defendant, | |
| v. | |
| JEFFREY JARWRI DORMU, D.O. and MINIMALLY INVASIVE VASCULAR CENTER OF MARYLAND, LLC, | Civil Action No. 22-0791-TDC |
| Defendants/Third Party Plaintiffs, | |
| v. | |
| THE MEDICAL PROTECTIVE COMPANY, | |
| Third Party Defendant. | |

**MEMORANDUM OPINION**

Plaintiff Aspen Specialty Insurance Company ("Aspen") filed this civil action against Defendants Dr. Jeffrey Dormu and Minimally Invasive Vascular Center, LLC ("MIVC") seeking a declaratory judgment that Aspen has no duty to defend or indemnify them in a medical malpractice action brought by a former patient of Dr. Dormu. Dr. Dormu and MIVC (collectively, "the Dormu Parties") filed a Counterclaim against Aspen and a Third Party Complaint against Third Party Defendant the Medical Protective Company ("MedPro"), seeking declaratory judgments that Aspen, MedPro, or both are obligated to defend and indemnify the Dormu Parties in the underlying medical malpractice case. After the Court granted a Motion for Judgment on the Pleadings filed by Aspen and denied a Motion to Dismiss filed by MedPro, and the parties conducted discovery, MedPro filed a Motion for Summary Judgment, which is fully briefed. Upon

review of the submitted materials, the Court finds that no hearing is necessary. D. Md. Local R. 105.6. For the reasons set forth below, MedPro's Motion will be DENIED, and judgment will be entered in favor of Dr. Dormu and MIVC.

## BACKGROUND

Dr. Dormu is a surgeon specializing in vascular surgery and general surgery who has operated MIVC in Laurel, Maryland since 2008. Dr. Dormu purchased professional liability insurance policies from MedPro ("the MedPro Policies"), through which he and MIVC were insured through October 9, 2021.

## I.    The MedPro Policies

The MedPro Policies issued to Dr. Dormu and MIVC both covered the policy period from October 9, 2020 to October 9, 2021. The MedPro Policy issued to Dr. Dormu ("the Dormu MedPro Policy") states, in relevant part, that:

> [MedPro] hereby agrees to defend and pay damages, in the name and on behalf of the Insured or his or her estate,

> A.    In any claim first made, or potential claim first brought to the Insured's attention, during the term of this policy based upon professional services rendered, or which should have been rendered, after the retroactive date by the Insured, or any other person for whose acts or omissions the Insured is legally responsible, in the practice of the Insured's profession as hereinafter limited and defined.

> However, the Company shall have no duty to defend or pay damages:

> 1.    on a claim unless it was reported to the Company during the term of this policy or thirty (30) days thereafter.

> 2.    on a potential claim unless it was reported to the Company during the term of this policy and the report includes all reasonably obtainable information, including the time, place and circumstances of the incident; the nature and extent of the patient's injuries; and the names and addresses of the patient and any available witnesses.

Joint Statement of Undisputed Facts ("JSUF") ¶ 5, ECF No. 114-2; Joint Record ("J.R.") 22, ECF No. 119-2. Although the parties jointly state that the material terms of the two MedPro Policies are the same, they differ slightly in that the above-referenced language in the Dormu MedPro Policy generally providing coverage for a "potential claim first brought to the Insured's attention, during the term of this policy," J.R. 22, is replaced in the MedPro Policy issued to MIVC ("the MIVC MedPro Policy") with language referencing coverage for a "potential claim first discovered, during the term of this policy," J.R. 77.

As defined in the MedPro Policies, a "claim" is "an express written demand for money as compensation for civil damages," and the term "first made" means "the date the Insured initially received the claim for damages." JSUF ¶¶ 6, 7; J.R. 23, 78. A "potential claim" is "an incident which the Insured reasonably believes will result in a claim for damages," and the term "first discovered" means "the date the Insured initially knew, or reasonably should have known, of a potential claim." JSUF ¶ 7, J.R. 23, 78.

On August 16, 2021, MedPro declined to renew the MedPro Policies, effective on October 9, 2021. Dr. Dormu then applied for and purchased from Aspen a new professional liability insurance policy, which listed MIVC as an Additional Insured, for the policy period from October 9, 2021 through October 9, 2022 ("the Aspen Policy").

## II.    HCADRO Procedures

Under Maryland law, a party seeking to file a medical malpractice claim for damages due to a medical injury must first file a claim with the Director of the Maryland Health Care Alternative Dispute Resolution Office ("HCADRO"), which may consist of a completed HCADRO Claim Form and a formal pleading known as a "Statement of Claim." Md. Code Ann., Cts. & Jud. Proc., § 3-2A-04 (LexisNexis 2020); e.g., J.R. 198–206. If the claim meets certain requirements, it is

subject to arbitration through the HCADRO, but either party may waive arbitration. Md. Code Ann., Cts. & Jud. Proc. § 3-2A-06B ("Section 3-2A-06B"). If the claimant files a unilateral waiver of arbitration, the HCADRO Director verifies that the claimant has met all of the necessary requirements to file a medical malpractice action in state or federal court, which include "obtaining a Certificate of Merit from a licensed physician" and "meet[ing] the jurisdictional amount of damages in order to proceed." J.R. 242. HCADRO Director Harry L. Chase has attested that when a claimant files a unilateral election of waiver of arbitration, he reviews the claim "to confirm that it contains (1) a statement of claim for monetary damages that exceeds the jurisdictional amount and (2) a Certificate of Merit," and that if both documents are included as part of the claim, he then issues an "Order of Transfer" which is sent to the claimant and to the health care provider. *Id.*

Director Chase has further attested that he issues an Order of Transfer only if the claimant meets all of the prerequisites to proceed with a claim in state court. *Id.* When the HCADRO Director issues an Order of Transfer under these circumstances, the HCADRO does not typically send a copy of the Statement of Claim, together with the Order of Transfer or separately, to the healthcare provider or other respondents listed in the Statement of Claim.

## III.    The Terry Proceedings

On August 26, 2021, Heather Ann Terry ("Terry") filed a claim ("the Terry Claim") with the HCADRO relating to the death of her mother Linda Terry, a former patient of Dr. Dormu. The submitted Statement of Claim alleges a claim for wrongful death and a survival action against Dr. Dormu and MIVC on behalf of Terry, individually and as the personal representative of Linda Terry's Estate, for which Terry requested that she "be compensated with a fair, adequate, and just award of compensatory damages . . . plus costs." J.R. 205–06. With the Statement of Claim, Terry also filed a Certificate of Merit and an Election to Waive Arbitration with the HCADRO.

On September 7, 2021, Director Chase signed an Order of Transfer for the Terry Claim. The Order of Transfer states that because the claimant had "elected a Waiver of Arbitration" under Section 3-2A-06B, the HCADRO ordered that the Terry Claim be "transferred to the United States District Court, or to the [Maryland] Circuit Court of the appropriate venue." J.R. 190. On September 8, 2021, the HCADRO mailed the Order of Transfer, along with a two-page cover letter from Director Chase, to Terry's counsel, with copies sent to Dr. Dormu at his home address in Washington, D.C. and to MIVC at its business address in Laurel, Maryland.

The cover letter stated that it included as an attachment the "Order of Transfer as requested by one of the parties involved in this matter." J.R. 221. In the cover letter, Director Chase advised Terry's counsel that "[w]hen filing your case with the Circuit Court or United States District Court," the Maryland Code provides for "referral of your case to [HCADRO] for review by a Neutral Case Evaluator within six months," but that during any neutral case evaluation period, "the Circuit Court or United States District Court shall continue to have jurisdiction over the case, ruling on all motions and matters of discovery." J.R. 221–22. Director Chase requested that Terry's counsel notify the HCADRO if "both parties mutually agree to a neutral case evaluation." J.R. 222. The HCADRO has no record of sending Terry's Statement of Claim or Certificate of Merit to Dr. Dormu or MIVC, together with the Order of Transfer or separately, and the Dormu Parties have admitted that they have no knowledge of either of those documents being sent to them.

On September 27, 2021, Terry filed a civil complaint against the Dormu Parties in the Circuit Court for Prince George's County, Maryland (the "Terry Complaint"), in which she alleged that Dr. Dormu and MIVC deviated from the applicable standards of care during their treatment of Linda Terry and negligently caused her death on the night of August 13, 2020. Dr. Dormu received a copy of the Terry Complaint during the week of October 12, 2021. Dr. Dormu has

stated that he had no knowledge of the Terry Claim prior to receiving a copy of the Terry Complaint in October 2021. MIVC received a copy of the Terry Complaint when it was served on MIVC on October 14, 2021. MIVC submitted the Terry Complaint to MedPro through MIVC's insurance broker on October 19, 2021. On November 1, 2020, MedPro denied insurance coverage for Dr. Dormu and MIVC in relation to the Terry Complaint on the basis that it was received by the Dormu Parties after the expiration of the MedPro Policies.

## IV.    Procedural History

The procedural history of this case prior to the filing of Aspen's Motion for Judgment on the Pleadings and MedPro's Motion to Dismiss is set forth in this Court's memorandum opinion in resolving those motions, which the Court incorporates by reference. *Aspen Spec. Ins. Co. v. Dormu* ("*Dormu I*"), No. 22-0791-TDC, 2023 WL 6049833, at *3–4 (D. Md. Sept. 15, 2023). In the operative Amended Complaint, Aspen sought a declaratory judgment that the Aspen Policy did not provide coverage to the Dormu Parties in relation to the Terry Complaint. In the operative Amended Counterclaim and Third Party Complaint, the Dormu Parties asserted a counterclaim against Aspen seeking a declaratory judgment that the Aspen Policy creates a duty to defend and indemnify the Dormu Parties against the claims made in the Terry Complaint, and a third-party claim against MedPro seeking, in the alternative, a declaratory judgment that MedPro has a duty under the MedPro Policies to defend and indemnify the Dormu Parties against the claims made in the Terry Complaint. After Aspen filed a Motion for Judgment on the Pleadings and MedPro filed a Motion to Dismiss, the Court granted Aspen's motion and dismissed Aspen from the case, but it denied MedPro's motion and sent the case against MedPro to discovery. *See id.* at *7, *10.

6

## DISCUSSION

In its Motion for Summary Judgment, MedPro argues that under the present record, it has no duty to defend or indemnify under the terms of the MedPro Policies because no claim or potential claim was made within the designated time frame so as to establish coverage.

### I.    Legal Standards

#### A.    Motion for Summary Judgment

Under Federal Rule of Civil Procedure 56(a), the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is "genuine" only if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248–49.

#### B.    Contract Interpretation

The Motion centers on the interpretation of contracts, specifically, the MedPro Policies. Under Maryland law, which applies to these disputes, courts "do[] not follow the rule that insurance policies are to be most strongly construed against the insurer." *Cap. City Real Est., LLC v. Certain Underwriters at Lloyd's London, Subscribing to Policy Number: ARTE018240*, 788 F.3d 375, 379 (4th Cir. 2015) (quoting *Empire Fire & Marine Ins. Co. v. Liberty Mut. Ins. Co.*, 699

7

A.2d 482, 494 (Md. 1997)). Rather, courts apply "ordinary contract principles to insurance contracts." *Id.* Under Maryland contract principles, a court should "accord a word its usual, ordinary and accepted meaning" unless there is evidence that the parties intended "to employ it in a special or technical sense." *Cheney v. Bell Nat'l Life Ins. Co.*, 556 A.2d 1135, 1138 (Md. 1989). "[T]he intention of the parties is to be ascertained if reasonably possible from the policy as a whole." *Id.* If the insurance contract is unambiguous, the contract is construed based on the language alone. *See Cap. City Real Est., LLC*, 788 F.3d at 379. Where a contract is ambiguous, "extrinsic and parol evidence may be considered." *Cheney*, 556 A.2d at 1138. However, if the introduction of extrinsic evidence does not resolve the ambiguity, the insurance contract is "construed against the insurer as the drafter of the instrument." *Id.*

Maryland courts apply a two-part test to determine if an insurer has a duty to defend. First, the court must determine "what is the coverage and what are the defenses under the terms and requirements of the insurance policy." *St. Paul Fire & Marine Ins. Co. v. Pryseski*, 438 A.2d 282, 285 (Md. 1981). Second, the court reviews the allegations of the underlying suit to determine whether they "potentially bring the tort claim within the policy's coverage." *Id.* In examining the coverage and defenses available under the policy, a court must construe the contract "as a whole and give effect to every clause and phrase." *Harleysville Preferred Ins. Co. v. Rams Head Savage Mill, LLC*, 187 A.3d 797, 806 (Md. Ct. Spec. App. 2018) (internal citations omitted). Once an insured establishes that an injury is within the scope of coverage, if the insurer claims that an exclusion removes the insurer's obligation to indemnify the insured, the insurer bears the burden of showing that the exclusion applies. *Prop. & Cas. Ins. Guar. Corp. v. Beebe-Lee*, 66 A.3d 615, 624 (Md. 2013); *White Pine Ins. Co. v. Taylor*, 165 A.3d 624, 633–34 (Md. Ct. Spec. App. 2017).

8

## II.    Potential Claims

As relevant here, the Dormu MedPro Policy states that it covers "any claim first made, or potential claim first brought to the Insured's attention, during the term of this policy." J.R. 22. The MIVC MedPro Policy states that it covers "any claim first made, or potential claim first discovered, during the term of this policy." J.R. 77. Both MedPro Policies define a "claim" as "an express written demand for money as compensation for civil damages" and "[f]irst made" as "the date the Insured initially received the claim for damages." JSUF ¶¶ 6–7; J.R. 23, 78. Both policies define a "potential claim" as "an incident which the Insured reasonably believes will result in a claim for damages" and "[f]irst discovered" as "the date the Insured initially knew, or reasonably should have known, of a potential claim." J.R. 23, 78. The parties do not dispute that the MedPro Policies are "claims-made and reported" policies, JSUF ¶ 4, which provide coverage for claims that are both made against an insured party and reported to the insurer during the policy period, as opposed to a pure "claims-made" policy, which provides coverage for claims made against the insured party within the policy period, even if not reported to the insurer during the policy period. *Sherwood Brands, Inc. v. Great Am. Ins. Co.*, 13 A.3d 1268, 1282 (Md. 2011).

Based on this language, the Court concludes that insurance coverage under the MedPro Policies can be triggered in two ways. First, coverage can arise based a "claim" when there is "an express written demand for money as compensation for civil damages" that the Insured "initially received" within the term of the policy. J.R. 23, 78. Second, although the Dormu MedPro Policy does not define the term "first brought to the Insured's attention," J.R. 22, where the parties state that "[t]he material terms of the policy issued to Dr. Dormu and policy issued to MIVC are the same," JSUF ¶ 3, coverage can also be triggered through a "potential claim" when there is "an

9

incident which the Insured reasonably believes will result in a claim for damages" that the Insured "initially knew, or reasonably should have known," about within the term of the policy, J.R. 78.

In arguing that the MedPro Policies provide coverage over the Terry Claim, the Dormu Parties advance multiple theories, including that the Statement of Claim filed with the HCADRO on August 26, 2021, and the Terry Complaint filed on September 27, 2021 and delivered to the Dormu Parties during the week of October 12, 2021, were each a "claim" that was first made during the policy period; that an April 21, 2021 request for medical records sent by Terry to the Dormu Parties was a "potential claim"; and that upon the issuance of the September 8, 2021 Order of Transfer by the HCADRO, there was a "potential claim" first discovered or brought to the Insureds' attention during the term of the MedPro Policies. Although both the Statement of Claim and the Terry Complaint meet the definition of a "claim," these claims were not "first made" during the term of the MedPro Policies because there is no evidence that the Statement of Claim was sent to the Dormu Parties during the term of the MedPro Policies, and as the Court previously concluded in *Dormu I*, the Terry Complaint was not served on the Dormu Parties during that term. *Dormu I*, 2023 WL 6049833, at *7. The Court also finds that the April 21, 2021 medical records request was not a "potential claim," because as Dr. Dormu attested in his October 27, 2022 declaration, "[i]t is the rare instance when a medical records request relates to litigation," and "[o]f the medical records requests related to litigation, the vast majority derive from litigation unrelated to my treatment or practice and are simply seeking the entirety of a patient's medical history to determine baseline health or assess pre-existing conditions." J.R. 277–78. Thus, by Dr. Dormu's own admission, it was not reasonable to conclude that the April 21, 2021 medical records request would result in a claim for damages. *Cf. Dormu I*, 2023 WL 6049833, at *8 (finding that the medical records request was not a "claim" under the MedPro Policies).

The Court finds, however, that based on the Order of Transfer, there was a potential claim that was "[f]irst discovered" and "first brought to the Insured's attention" during the term of the Policy. J.R. 22–23, 77–78. First, the Order of Transfer and its accompanying cover letter specifically provided notice of a formal complaint filed with the HCADRO by Terry, identified with the caption "*Heather Ann Terry, Indv., et al. v. Jeffrey Jarwri Dormu, D.O., et al.*, HCA No. 2021-359," referenced that this case was being transferred either "to the United States District Court, or to the Circuit Court of the appropriate venue," J.R. 221–23, and advised that even if the parties elected for review of the case by a neutral case evaluator, "the Circuit Court or United States District Court shall continue to have jurisdiction over the case." J.R. 222. These statements demonstrating that a formal medical malpractice claim against Dr. Dormu was filed with the HCADRO, along with HCADRO Director Chase's attestation that he issues an Order of Transfer only if the claimant meets all of the prerequisites to proceed to the Maryland Circuit Court, J.R. 242, firmly establish that Terry's filing with the HCADRO was, at a minimum, a "potential claim" because it referred to an incident that insured parties such as the Dormu Parties would "reasonably believe[] will result in a claim for damages." J.R. 23.

Second, this potential claim was "first discovered" and "first brought to the attention" of the insured parties during the policy term because the record demonstrates that the Dormu Parties "initially knew, or reasonably should have known" of it during the policy period. J.R. 22, 78. HCADRO records, as well as a photograph provided by the Dormu Parties of the envelope used to send the Order of Transfer, establish that the HCADRO sent the Order of Transfer to Dr. Dormu and MIVC on or about September 7, 2021, with a cover letter dated September 8, 2021, and with a postmark of September 13, 2021, all well in advance of the end of the policy term on October 9, 2021. *Kolker v. Biggs*, 99 A.2d 743, 746 (Md. 1953) (stating that it is "an established rule of

evidence" that there is a presumption that a properly mailed letter "reached its destination at the regular time and was received by the person to whom it was addressed"); *Nelson v. Diversified Collection Servs., Inc.*, 961 F. Supp. 863, 869 n.4 (D. Md. 1997) (stating that "there is a presumption of receipt when notice is mailed to the last known address"). In turn, where the Order of Transfer and the accompanying cover letter specifically reference the Terry Claim and show that it was being transferred to a federal or state court, these documents demonstrate that the potential claim was "first discovered" and "first brought to the Insured's attention" upon their delivery because, on their face, they demonstrate that the Dormu Parties either "knew" or, at a minimum, "reasonably should have known" of the potential claim at that time. J.R. 23, 78. Because the record establishes that, as reflected in the Order of Transfer and its cover letter, the Terry Claim constituted a "potential claim first brought to the Insured's attention, during the term of this policy" and "a potential claim first discovered, during the term of this policy," it was subject to coverage under the MedPro Policies. J.R. 22, 77.

## III.    Section 19–110

Nevertheless, MedPro correctly asserts that although the Terry Claim constitutes a potential claim first discovered or brought to the Dormu Parties' attention during the policy period, it was generally subject to a policy exclusion which states that MedPro "shall have no duty to defend or pay damages . . . on a potential claim unless it was reported to [MedPro] during the term of this policy" along with certain specified information. J.R. 22, 77. There is no dispute that the Dormu Parties did not notify MedPro of the Terry Complaint until October 19, 2021, when MIVC sent a copy of the Terry Complaint to MedPro. There is no claim that this transmission lacked the specified information, but MedPro asserts that the transmission after the end of the policy term absolves it of the obligation to provide coverage.

12

In response, the Dormu Parties invoke Section 19–110 of the Maryland Insurance Code ("Section 19–110"), which provides that:

> An insurer may disclaim coverage on a liability insurance policy on the ground that the insured or a person claiming the benefits of the policy through the insured has breached the policy by failing to cooperate with the insurer or by not giving the insurer required notice only if the insurer establishes by a preponderance of the evidence that the lack of cooperation or notice has resulted in actual prejudice to the insurer.

Md. Code Ann., Ins. § 19–110 (LexisNexis 2017).

Because the transmission of the Order of Transfer, as a potential claim first brought to the Dormu Parties' attention during the policy period, generally triggered coverage under the MedPro Policies, and MedPro therefore seeks to disclaim coverage based on the failure to provide notice as specified in the MedPro Policies, the Dormu Parties argue that Section 19–110 applies, and MedPro may disclaim coverage only if it can establish "actual prejudice" from the lack of notice within the policy period. *Id.* The Dormu Parties rely on the decision by the Supreme Court of Maryland in *Sherwood Brands, Inc. v. Great American Insurance Company*, 13 A.3d 1268 (Md. 2011), in which Sherwood Brands, Inc. ("Sherwood") was covered by a policy that obligated Great American Insurance Company ("Great American") to "pay on behalf of the Insured Persons all Loss which the Insured Persons shall be legally obligated to pay as a result of a Claim . . . first made against the Insured Persons during the Policy Period," subject to certain exclusions. *Id.* at 1270–71. That policy defined a "Claim" as including certain "civil, criminal, administrative or arbitration proceeding[s] made against any Insured seeking monetary or non-monetary relief" and required Sherwood to provide notice of such a claim to Great American "as soon as practicable, but in no event later than ninety (90) days after the end of the Policy Period." *Id.* at 1271. Sherwood was served with notice of an administrative complaint and two civil complaints during the policy period but did not notify Great American of those complaints until more than 90 days

13

after the expiration date of its policy. *Id.* at 1272. Based on the failure to meet this deadline, Great American denied coverage of Sherwood's claims. *Id.*

The Maryland Supreme Court held that Section 19–110 does not apply to "policies in which the act triggering coverage . . . does not occur until after the expiration of the liability policy," but it does apply to "policies in which the act triggering coverage occurs during the policy period, but the insured does not comply strictly with the policy's notice provisions." *Id.* at 1288. When Section 19–110 applies, an insured party's failure to abide by the notice provision in a policy is grounds for disclaiming coverage only if the insurer "establishes by a preponderance of the evidence that the lack of . . . notice has resulted in actual prejudice to the insurer." Md. Code Ann., Ins. § 19–110; *see Sherwood Brands, Inc.*, 13 A.3d at 1288. Although *Sherwood* involved a pure "claims-made" policy, the Maryland Supreme Court has held that Section 19–110 also applies to "claims-made-and-reported" policies such as the MedPro Policies. *See Nat'l Union Fire Ins. Co. of Pittsburgh v. The Fund for Animals, Inc.* ("*National Union*"), 153 A.3d 123, 127 n.2 (Md. 2017); *see also Sherwood Brands, Inc.*, 13 A.3d at 1282, 1284 & n.21 ("Notice provisions, even in claims-made-and-reporting policies, must be deemed covenants such that failure to abide by them constitutes a breach of the policy sufficient to make § 19–110 applicable to such policies.").

Here, because the transmission of the Order of Transfer in September 2021 was an "act triggering coverage occur[ring] during the policy period," and the denial of coverage was based on the failure to "comply strictly with the policy's notice provisions," Section 19–110 is applicable. *See Sherwood*, 13 A.3d at 1288; *Nat'l Union*, 153 A.3d at 127 n.2.

Under Section 19–110, "an insurer must show, by a preponderance of the evidence, that the insured's delay in giving notice resulted in actual prejudice to the insurer in order to disclaim coverage." *Nat'l Union*, 153 A.3d at 141. As to whether an insurer has demonstrated such actual

14

prejudice, "the mere passage of time is not enough to establish actual prejudice." *Id.* at 137. Rather, "the proper focus should be on whether the insured's willful conduct has, or may reasonably have, precluded the insurer from establishing a legitimate jury issue of the insured's liability." *Id.* at 136 (quoting *Allstate Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 767 A.2d 831, 843 (Md. 2001)). Actual prejudice results when an insured has "precluded the insurer from establishing a legitimate jury issue or presenting potentially outcome-determinative evidence," "hampered the insurer from presenting a credible defense," or "impeded an insurer's right to involvement or participation in the litigation." *Id.* Such harm must "be more than possible, theoretical, hypothetical, speculative, or conjectural." *Id.*

In *National Union*, the Maryland Supreme Court found that where an insured party notified its insurer of a claim approximately two years after the deadline set by the insurance policy, but "before mediation, settlement, or the merits of the case had been reached," the insurer suffered no actual prejudice from the insured party's late notice of the claim. *Id.* at 130–31, 137, 142. In so ruling, the court contrasted that case from others in which actual prejudice was found, including instances in which the insured party "failed to notify the insurer of a claim until after that claim had gone to trial and a judgment had been entered against the insured," and timely notice would have allowed the insurer to "involve[] itself in the litigation by appointing counsel, investigating the claim, directing the defense, and even settling the claim as the insurance policy allowed." *Id.* at 139.

Here, MedPro has provided no basis to conclude that actual prejudice resulted from the Dormu Parties' failure to provide notice of Terry's potential claim. MedPro received notice of the Terry Complaint on October 19, 2021, only 10 days after the notice deadline of October 9, 2021, and just five days after the Terry Complaint was formally served on MIVC. There are no facts in

15

the record that could support the conclusion that MedPro suffered any actual prejudice as a result of the failure to report the Terry Claim 10 days earlier, whether based on an inability to establish a legitimate jury issue, present potentially outcome-determinative evidence, present a credible defense, participate in mediation or settlement, or otherwise. *See Nat'l Union*, 153 A.3d at 136, 142. Accordingly, pursuant to Section 19–110, the Court finds that MedPro cannot disclaim coverage based on the failure to provide notice of the Terry Claim in accordance with the timeline specified in the MedPro Policies. The Motion for Summary Judgment will therefore be denied.

## CONCLUSION

For the foregoing reasons, MedPro's Motion for Summary Judgment will be DENIED. A separate Order shall issue.

Date:   June 30, 2026



THEODORE D. CHUANG
United States District Judge